No. 91-365

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

ROBERT J. KASETA, and MARGARET R. KASETA,
d/b/a JOHNNY'S HOUSE OF FINE FOODS,

Plaintiffs and Appellants,

-vs-

NORTHWESTERN AGENCY OF GREAT FALLS, and
HAWKEYE-SECURITY INSURANCE COMPANY,

Defendants and Respondents..

APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Patrick F. Flaherty, Great Falls, Montana

        For Respondent:

        Joseph R. Marra; Marra, Wenz, Johnson & Hopkins,
        Great Falls, Montana
        Robert J. Vermillion; Smith, Walsh, Clarke &
        Gregoire, Great Falls, Montana

FILED

MAR 3 - 1992

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Submitted on Briefs:  December 19, 1991

Decided:  March 3, 1992

Justice Fred J. Weber delivered the Opinion of the Court.

Robert and Margaret Kaseta, d/b/a Johnny's House of Fine Foods brought suit against Hawkeye-Security Insurance Co., Inc. (Hawkeye) and Northwestern Insurance Agency of Great Falls (Northwestern) for breach of contract, negligent misrepresentation, constructive fraud, unfair claim settlement practices, and insurance company malpractice. The District Court of the Eighth Judicial District, Cascade County, Montana found no genuine issues of material fact and granted summary judgment in favor of both defendants. Kasetas appeal. We affirm.

The Kasetas raise the following issues on appeal:

1. Did the court err in granting summary judgment in favor of Hawkeye?

2. Did the court err in granting summary judgment in favor of Northwestern?

Robert and Margaret Kaseta, d/b/a Johnny's House of Fine Foods, bring this suit against their insurer, Hawkeye, and their insurance agent, Northwestern. In July 1990, while covered by a Hawkeye insurance policy, Kasetas contend a hail storm caused approximately $26,000 damage to their bar and restaurant. Hawkeye paid $7,318 on the claims, contending the business was insured for less than 80% of its actual value. First, the Kasetas dispute that the business was underinsured. Next, in the alternative, they claim if the business was underinsured the defendants led them to believe they were properly insured, and had a duty to provided them with a different policy.

2

On March 1, 1989, the Kasetas purchased the restaurant from Johnny Austin on a contract for deed. Austin had informed the Kasetas that the commercial policy covering the business was a good policy. That policy, issued by Scottsdale Insurance, insured the building for $70,000 and the contents for $30,000. Austin represented to Kasetas that this policy had fully covered a $90,000 claim for fire damage in 1987.

After purchasing the business, the Kasetas purchased health and life policies from Lon Bowman of Northwestern Insurance Agency. Bowman referred the Kasetas to his associate at Northwestern, Joyce Jenkins, regarding a commercial policy. When Jenkins contacted the Kasetas, Robert Kaseta informed her that he wanted the same policy coverage they had through Scottsdale.

Jenkins informed Robert Kaseta that Hawkeye-Security Insurance would provide commercial coverage at a competitive rate. Kasetas applied for insurance, and Hawkeye issued a policy insuring the building for $70,000 and the contents for $30,000. Thus, the Kasetas received the policy and coverage they requested.

The policy declaration page contained a coinsurance percentage of 80%, indicating that Hawkeye would invoke a coinsurance penalty if the property was insured at less than 80% of its actual value at the time of the loss. The contract explained:

> We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Next, the contract describes the company's method of calculating the maximum amounts payable if the company finds the business was

3

underinsured. It states: "The amount determined ... is the most we will pay. For the remainder, you will either have to rely on other insurance or absorb the loss yourself." This policy and this provision were in effect in July 1990, at the time the hail storm damaged Kaseta's property.

After the storm, Kasetas submitted approximately $26,000 in claims. At that time, the insurance adjuster informed Kasetas that the business was underinsured. Thus, Hawkeye invoked the coinsurance penalty. At the hearing for summary judgment, the court granted summary judgment finding that no genuine issues of material fact existed, and as a matter of law the defendants should prevail. From this judgment Kasetas appeal.

I

Did the court err in granting summary judgment in favor of Hawkeye?

Under Rule 56(c), M.R.Civ.P., summary judgment is proper if the record discloses no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Payne Realty & Housing v. First Sec. Bk. (1991), 247 Mont. 374, 376, 807 P.2d 177, 178. In reviewing a motion for summary judgment, we view the evidence in the light most favorable to the party opposing the motion. Lorash v. Epstein (1989), 236 Mont. 21, 24, 767 P.2d 1335, 1337. Here, looking at the evidence in the light most favorable to the insured, we conclude the court properly granted summary judgment in favor of the insurer.

The Kasetas contend genuine issues of material fact exist

4

which makes the breach of contract claim improper for summary judgment. In its findings, the District Court relies on Stott v. Fox (1990), 246 Mont. 301, 805 P.2d 1305. In that case, this Court held that a party cannot make a material issue of fact through the use of their own contradictory testimony. Stott, 246 Mont. at 309, 805 P.2d at 1309-1310. In Stott, the plaintiff claimed a genuine issue of material fact prevented the court from ruling summarily in support of the defendant. The material fact was created by the plaintiff's affidavit which contradicted prior deposition testimony. We held: "[A] district court may grant summary [judgment] where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before." Stott, 246 Mont. at 309, 805 P.2d at 1310, citing Wilson v. Westinghouse (8th Cir. 1988), 838 F.2d 286, 289.

As in Stott, here summary judgment was proper because Kasetas created a material issue of fact by contradicting prior sworn statements. On April 20, 1991, the Kaseta's responded to the following interrogatories:

> INTERROGATORY NO. 7: Paragraph 24 of the complaint alleges that the insurance company sold "an inadequate and substandard insurance policy." Please describe with specificity in what way the subject policy was "inadequate and substandard."
>
> ANSWER: We admit that the company has paid the sums due to date under the insurance policy that was issued . . . (Emphasis added.)
>
> INTERROGATORY NO. 8: Please state how a standard and proper insurance policy would have differed from the policy which was sold to the plaintiff.

5

ANSWER:  The total value of building would have been nearer to $200,000.00 and would have covered all damages to that amount less the deductible.  (Emphasis added.)

INTERROGATORY NO. 9:  Do you allege that Hawkeye Insurance underpaid the plaintiffs under the terms of the policy?

ANSWER:  Not under the terms of the policy issued. However, under the terms of the policy that the plaintiff thought he received, yes.

INTERROGATORY NO. 15:  Your first claim for relief is entitled "Breach of Contract."  Please state what terms of the contract of insurance were breached.

ANSWER:  We will amend the Complaint and dismiss the first claim for relief entitled Breach of Contract. Therefore, we will not give an answer to this.

Upon receiving these interrogatories, Hawkeye filed a motion for summary judgment on April 30, 1991.  Then on May 13, 1991, Mr. Kaseta filed an affidavit which contradicted these sworn statements.  The affidavit stated that: "in . . . [Mr. Kaseta's] opinion, as owner of the property, the building is properly valued at $100,000."  Thus, in contradiction of prior statements, Kasetas now contend Hawkeye incorrectly invoked the coinsurance penalty.

Like Stott, here Kasetas attempt to make a material issue of fact through the use of their own contradictory testimony. Accordingly, we conclude the plaintiffs' simultaneous contradictory positions regarding the value of the building create no genuine issues of material fact, and Hawkeye is entitled to judgment as a matter of law.  Thus, the court appropriately granted summary judgment in favor of Hawkeye on the breach of contract issue.

Next, Kasetas claim the court erred in granting summary judgment in favor of Hawkeye on the plaintiffs' claim of unfair

6

claims settlement practices under § 33-18-201(6)(7), MCA, the Unfair Trade Practices Act. § 33-18-201 states in part:

> **Unfair claim settlement practices prohibited.** No person may, with such frequency as to indicate a general business practice, do any of the following:
>
> (6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;
>
> (7) compel insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds...

In this case, the Kasetas have admitted that Hawkeye made proper payment under the terms of the contract. Thus, plaintiffs have presented no evidence of unfair claims settlement under § 33-18-201(6), or § 33-18-201(7), MCA. Accordingly, we conclude the court properly granted Hawkeye summary judgment under the Unfair Trade Practices Act.

Finally, Kasetas contend the court improperly granted summary judgment on the claim of insurance company malpractice. Here, in their complaint, Kasetas allege Hawkeye breached its duty "to sell insurance to properly cover the insured's needs." However, the Kasetas admit Hawkeye provided them with the coverage they requested. Thus, we conclude the court properly granted summary judgment on this claim.

Finally, Kasetas have produced no evidence that Hawkeye made any representations to them regarding their coverage. Without such evidence Kasetas cannot support a claim of negligent misrepresentation or constructive fraud against the insurer, Hawkeye. Thus, we conclude the court properly granted summary

7

judgment in favor of Hawkeye on this issue.

We hold that the court properly granted summary judgment in favor of Hawkeye-Security Insurance Co. Inc.

II

Did the court err in granting summary judgment in favor of Northwestern?

The Kasetas claim the District Court incorrectly granted summary judgment in favor of Northwestern on the issue of negligent misrepresentation and constructive fraud. Kasetas base these claims on Northwestern's failure to supply them with material information regarding the value of their business and the coinsurance provision.

First, the Kasetas testified that Jenkins made no representations regarding the insurance. Further Jenkins provided them with a Hawkeye policy which contained the same amount of coverage as the Scottsdale policy. Finally, Kasetas do not dispute they received the coverage they requested. Thus, we agree with the District Court when it found that any damage suffered is attributable to Kasetas' request to receive the same coverage they had under their Scottsdale policy. We conclude the District Court properly granted summary judgment on the claims of constructive fraud and negligent misrepresentation.

Next, the Kasetas appeal the summary judgment granted in favor of Northwestern on their claim of insurance agent malpractice. Here, the Kasetas did not plead a claim for relief based on insurance agent malpractice, and the District Court correctly

8

disregarded this count with respect to Northwestern.

Finally, the Kasetas have submitted no proof that Northwestern acted as an insurance company or was a party to the contract, thus, this Court will not consider Kasetas' claims for breach of contract and alleged violations of the Unfair Trade Practices Act.

We hold the court correctly granted summary judgment in favor of Northwestern Insurance Agency of Great Falls.

Affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

9

March 3, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Patrick F. Flaherty
Attorney at Law
625 Central Ave. West, #101
Great Falls, MT 59404

Robert J. Vermillion
SMITH, WALSH, CLARKE & GREGOIRE
P.O. Box 2227
Great Falls, MT 59403-2227

Joseph R. Marra
MARRA, WENZ, JOHNSON & HOPKINS, P.C.
P.O. Box 1525
Great Falls, MT 59403-1525

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy